155 So. 686

## ALABAMA POWER CO. v. SIDES.
### 6 Div. 580.

Supreme Court of Alabama.
June 21, 1934.

Davis & Curtis, of Jasper, for appellee.

Arthur Fite, of Jasper, and Martin, Turner & McWhorter, of Birmingham, for appellant.

FOSTER, Justice.

This is an action against appellant, a distributer of electricity to the public, for damages for discontinuing eléctric service.

Appellant contended that it was justified in so doing because of the dangerous condition of plaintiff's wires which received the service.

It is not disputed that the law exacts of defendant a high degree of responsibility when its customer has a defective condition rendering service by defendant dangerous, and that danger is known to defendant. Alabama Power Co. v. Jones, 212 Ala. 206, 101 So. 898; Alabama Power Co. v. Curry, 228 Ala. 444, 153 So. 634.

The court submitted to the jury the question of whether plaintiff's wiring was dangerous. In this, we think it erred, and should have given the affirmative charge for defendant.

The situation was that plaintiff had been using electric service in another house as he built the one in question, and as the latter was finished the former was torn away, but leaving the posts of the old house standing on which the meter and switch were fastened. They stood some ten feet from the new house. Plaintiff extended a wire from it across his lot and porch into his house through the door opening. He used what is termed an inside drop, twisted, wire cord. The house had no wiring system, but this long cord was moved around in the house with a bulb on the end for lights, and where such service might be needed.

This drop wire cord was shown to be unsuitable for outside use, was liable to leak and cause injury to persons coming in contact with it, and to set the house afire. The evidence shows that it was not stretched tightly and fastened so as not to sag, but extended loosely through a staple, and 'did sag more or less. This continued for, to wit, six months.

Defendant's witnesses all testified that it was dangerous, and there was none to the contrary. Defendant's employees remonstrated time and again, and plaintiff promised to remedy the condition. Finally a formal notice was given that if not remedied, service would be discontinued. This was done after plaintiff failed to take any steps in that regard, although defendant's employees proposed to supply the necessary material, and personally to lend plaintiff enough money to pay the cost of making the change.

When the testimony of experts is undisputed, directly or indirectly, that a condition is dangerous, and that statement is based upon "scientific processes, methods and knowledge," and when there is no reason for the exercise of common knowledge against it, the affirmative charge on that question, with hypothesis predicated upon the belief of the evidence, should be given upon due request. Commonwealth Life Ins. Co. v. Harmon, 228 Ala. 377, 153 So. 755, 758; Harris v. N., C. & St. L. R. R. Co., 153 Ala. 139, 143, 44 So. 962, 14 L. R. A. (N. S.) 261; Lawson v. Mobile Electric Co., 204 Ala. 318, 85 So. 257; Louisville & N. R. R. Co. v. Marbury Lumber Co., 125 Ala. 237, 28 So. 438, 50 L. R. A. 620.

Such is the state of the evidence shown in this record.

Common knowledge does not discredit the testimony here given that the condition was dangerous.

We therefore think, as we stated, that the court erred in refusing the affirmative charge requested by appellant.

Reversed and remanded.

GARDNER, THOMAS, and BOULDIN, JJ., concur.